UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x

JENNIFER S. WILKOV,

           Plaintiff,

    -v-                                   No.  15 CV 7937-LTS

AMERIPRISE FINANCIAL SERVICES,
INC., f/k/a AMERICAN EXPRESS
FINANCIAL ADVISORS, INC., and NEW
YORK COUNTY DISTRICT ATTORNEY,

           Defendants.

--------------------------------------------------------x

MEMORANDUM OPINION AND ORDER

On October 7, 2015, Defendant Ameriprise Financial Services, Inc., f/k/a

American Express Financial Advisors, Inc. ("Ameriprise"), removed this case from the Supreme

Court of the State of New York, asserting that this Court has subject matter jurisdiction of this

case under 28 U.S.C. § 1332.  (Docket entry no. 1 ("Notice of Removal").)  In the Notice of

Removal, Ameriprise asserted that, although both Plaintiff Jennifer S. Wilkov and Defendant

New York County District Attorney (the "DA" and, together with Ameriprise, "Defendants")

were citizens of the State of New York, the New York County District Attorney had been

"improper[ly]" joined to the matter because "there is no possibility, based on the pleadings, that

the plaintiff can state a cause of action against the [DA]."  (Notice of Removal, p. 3.)

This Court ordered Ameriprise to show cause why the joinder of the DA to this

action was fraudulent (docket entry no. 47), and Ameriprise responded on December 21, 2016

(docket entry no. 49).  Additionally, both Ameriprise and the DA have moved, pursuant to

Federal Rule of Civil Procedure 12(b)(6), to dismiss Plaintiff's Amended Complaint (docket

entry no. 24) for failure to state a claim.

   The Court has carefully reviewed the submissions of all parties submitted in connection with the instant motions, including Ameriprise's response to the Court's Order to Show Cause and, for the following reasons, finds that the joinder of the DA to this action was fraudulent and therefore does not defeat this Court's subject matter jurisdiction, and further grants both Defendants' motions to dismiss.

BACKGROUND

   The following recitation of facts is drawn from the Amended Complaint (docket entry no. 24 ("AC")), the well-pleaded factual allegations of which are taken as true for the purposes of this motion to dismiss, as well as the public record, including records of earlier civil and criminal cases, of which the Court may take judicial notice.[1]

   Ameriprise hired Wilkov as a financial advisor in approximately December 2000, pursuant to an employment agreement.  (AC ¶¶ 7-8.)  In approximately 2004, Wilkov became a Franchisee with Ameriprise, and signed Ameriprise's Franchise Agreement.  (AC ¶ 9.)  Wilkov alleges, upon information and belief, that the Franchise Agreement required Ameriprise to supervise all aspects of Wilkov's activities as an investment advisor.  (AC ¶ 10.)

   Also in 2004, Wilkov began investigating a possible investment opportunity in the California real estate market with a company called CPM Holdings.  (AC ¶¶ 12-13.)  Wilkov was referred to this opportunity by her brother.  (AC ¶ 12.)  Wilkov alleges that Ameriprise was

---

[1]  A number of fact declarations from individuals were also submitted in connection with these motions.  The Court has not considered the allegations set forth in these declarations in deciding the instant motions, except insofar as they provide materials that are public record as addressed herein.

required to review all transactions involving family members, but did not provide any independent review or supervision of Wilkov's investments in CPM Holdings.  (AC ¶ 14.) However, Wilkov did make her compliance supervisor aware of the CPM Holdings investment, and was told that Ameriprise did not invest in real estate, and Wilkov was therefore "on her own" with respect to that investment.  (AC ¶ 15-16.)  Wilkov alleges that Ameriprise required her to complete a form that was not compliant with applicable regulations in order to continue investing with CPM Holdings.  (AC ¶ 16-17.)

According to public records maintained by the Financial Industry Regulatory Authority ("FINRA"), Wilkov's association with Ameriprise ended in August 2005.  (See Declaration of Virginia T. Shea, Esq., at Ex. A (FINRA BrokerCheck report).)  The CPM Holdings investment was ultimately revealed to be fraudulent, leading Wilkov to plead guilty on January 22, 2008, to multiple fraud-related charges in New York State court.  (See docket entry no. 30 (Declaration of ADA Elizabeth Krasnow ("Krasnow Decl.")), Ex. B (People v. Wilkov, Ind. No. 2765/07, Plea Transcript ("Plea Tr.")).)  Wilkov alleges, on information and belief, that in testimony before the Grand Jury considering whether to indict her, Ameriprise employees falsely represented to the Grand Jury that Wilkov did not inform Ameriprise about the investment in CPM Holdings.  (AC ¶ 21.)

During her plea allocution, Wilkov admitted that she began soliciting investors for the investments in CPM Holdings in January 2005.  (Plea Tr. 13:25-14:3.)  Wilkov further admitted that she failed to disclose to her Ameriprise clients that she was receiving commissions from CPM Holdings.  (Plea Tr. 14:10-15.)  She also admitted that she falsely told her Ameriprise clients that she had worked with CPM Holdings and its principals in the past, and had done due diligence on the investment, when in reality she "had no basis for recommending their company

and their investments." (Plea Tr. 15:3-7.) Wilkov's investors lost all of their money. (Plea Tr. 15:25-16:2.) Wilkov herself received $142,000 in referral commissions from CPM Holdings. (Plea Tr. 15:21-22.)

Separately from the criminal case, in June 2007, the DA commenced a civil asset forfeiture proceeding against Wilkov. (AC ¶ 45.) In connection with the forfeiture proceeding, Wilkov was ordered to liquidate her apartment and provide the proceeds to the DA. (AC ¶ 46.) Wilkov did so, and her attorneys provided checks totaling $190,192.22 to the DA to be placed in escrow. (AC ¶ 47.) From that escrow account, the New York State Court overseeing the forfeiture proceeding ordered certain funds paid to Wilkov's lawyers and additional monies paid to Wilkov's victims. (AC ¶¶ 48-51.) Wilkov alleges that a remaining balance of $21,528.36 was not allocated or returned to her. (AC ¶ 51.) Wilkov signed a Stipulation of Discontinuance of the asset forfeiture proceeding in which Wilkov specifically waived "each and every defense, objection, remedy and/or right of appeal she may have under the constitutions, statutes, common law, and equitable doctrines of the United States and the State of New York in connection with the . . . disposition of the . . . civil forfeiture action against her." (Krasnow Decl., Ex. H (Morgenthau v. Wilkov, No. 405072/07, Stipulation of Discontinuance).)

In 2011, Plaintiff's father commenced a FINRA proceeding against Ameriprise.[2] In that proceeding, Ameriprise was "found to have committed common law fraud, securities fraud, negligence, breach of contract, and other findings," and Plaintiff was absolved of contributory liability. (AC ¶ 25.) The Amended Complaint asserts, without specificity, that "testimony" from the FINRA hearing "made it clear that facts, including the allegations

---

[2]    Although the Amended Complaint does not state the gravamen of Plaintiff's father's claim before FINRA, Plaintiff's opposition brief notes that her father lost over $1 million in the fraudulent scheme. (Docket entry no. 42, p. 3.)

proffered to the District Attorney were deliberately false."  (AC ¶ 26.)

       In her Verified Complaint filed in New York State Court, Wilkov asserted two causes of action against Ameriprise (for breach of contract or unjust enrichment, and for fraud) and one cause of action against the DA.  (Notice of Removal, Ex. 1 (Verified Complaint).)  The cause of action against the DA was captioned as one "for permanent injunction, mandamus, and/or other equitable relief."  (<u>Id.</u>, p. 7.)

       In her Amended Complaint filed in this Court, Wilkov reasserted these three claims and added a fourth cause of action, against the DA, for prosecutorial misconduct and for improper disbursement of seized proceeds.  (AC, p. 9.)

DISCUSSION

<u>Subject Matter Jurisdiction</u>

       In its Notice of Removal, Ameriprise invoked the subject matter jurisdiction of this Court pursuant to 28 U.S.C. § 1332, which requires the complete diversity of citizenship of all parties.  "[T]he generally accepted practice is to 'evaluate a defendant's right to remove a case to federal court at the time the removal notice' was filed, ignoring any later-filed amendments to the complaint."  <u>DNJ Logistic Group, Inc. v. DHL Exp. (USA), Inc.</u>, 727 F. Supp. 2d 160, 165 (E.D.N.Y. 2010) (quoting <u>Vera v. Saks & Co.</u>, 335 F.3d 109, 116 n.2 (2d Cir. 2003)).  "[A] defendant may not defeat a federal court's diversity jurisdiction and a defendant's right of removal by merely joining as defendants parties with no real connection with the controversy."  <u>Pampillonia v. RJR Nabisco, Inc.</u>, 138 F.3d 459, 460-61 (2d Cir. 1998).  Accordingly, such a defendant may be ignored for purposes of determining whether diversity jurisdiction exists if "there is no possibility, based on the pleadings, that a plaintiff can state a

cause of action against the non-diverse defendant in state court." Id. at 461.

Here, the Verified Complaint filed prior to removal asserted that Plaintiff is a citizen of the State of New York and the DA is "an organizational unit of New York State." (Verified Complaint ¶ 1, 3.)  The Office of the District Attorney is not an entity with a legal existence that is capable of being sued, as distinct from the District Attorney himself. Woodward v. Office of Dist. Att'y, 689 F. Supp. 2d 655, 658 (S.D.N.Y. 2010).  That the DA is "not an entity capable of being sued" is considerable evidence that Plaintiff could not state a cause of action against the DA in state court.  Barreto v. Cnty. of Suffolk, 455 F. App'x 74, 76 (2d Cir. 2012).

Further, however, the Verified Complaint asserted only a claim for "permanent injunction, mandamus, and/or other equitable relief" against the DA, requesting that the court "reopen the investigation and consider reversing the conviction of Plaintiff."  (Verified Complaint ¶ 36.)  There is no cause of action for an injunction under New York law; a plaintiff must allege a substantive cause of action that provides "the basis for an award of injunctive relief."  Held v. Macy's, Inc., 25 Misc. 3d 1219(A) at *19 (N.Y. Sup. Ct. Westchester Cnty. 2009).  The Verified Complaint did not proffer any substantive cause of action in connection with its request for injunctive relief.

Nor is there a basis for Plaintiff to request mandamus relief relating to her prosecution, as mandamus relief is not available relating to acts that "involve the exercise of official discretion or judgment," Matter of Morrison v. Hynes, 82 A.D.3d 772, 772 (N.Y. App. Div. 2d Dep't 2011), and "the decision whether to prosecute is entrusted to the sole discretion of the District Attorney."  Matter of McTootle v. Rice, 60 A.D.3d 1068 (N.Y. App. Div. 2d Dep't 2009).  Similarly, reviewing a criminal case to determine a defendant's innocence "requires

professional and discretionary review of evidence" by the District Attorney.  Friedman v. Rice,

47 Misc. 3d 944, 951 (Sup. Ct. Nassau Cnty. 2015).

Insofar as Plaintiff sought to press a claim against the District Attorney for

wrongful or malicious prosecution, such a claim would also necessarily fail because of

Plaintiff's guilty plea.  Garcia v. City of New York, 115 A.D.3d 447, 447 (N.Y. App. Div. 1st

Dep't 2014) (holding that a guilty plea establishes probable cause for a prosecution, which is "a

complete defense to plaintiff's claims of . . . malicious prosecution" (internal quotation marks

omitted)).

Accordingly, the Court finds that Ameriprise has satisfied its burden, stated in

this Court's Order to Show Cause, of demonstrating that there is no possibility, based on the

Verified Complaint, that Plaintiff could have stated a claim against the DA in New York State

court, and accordingly the claims asserted against the DA in the Verified Complaint are properly

ignored for jurisdictional purposes.  This Court accordingly has subject matter jurisdiction of this

case pursuant to 28 U.S.C. § 1332.


The Motions to Dismiss

"To survive a motion to dismiss, a complaint must contain sufficient factual

matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v.

Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570

(2007)).  A complaint cannot simply state legal conclusions or bare elements of a cause of

action; there must be factual content pleaded that "allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at 678.

Count One: Breach of Contract and Unjust Enrichment, Against Ameriprise

Ameriprise moves to dismiss Count One of the Amended Complaint on the grounds that it is time-barred.  Count One asserts that Ameriprise "breached the Franchise Agreement by failing to provide requisite compliance supervision, by violating the firm's policies and procedures, and by violating federal and state law."  (AC ¶ 30.)  The parties agree that, under the terms of the Franchise Agreement, the statute of limitations applicable to the breach of contract claim is governed by Minnesota state law.

Minnesota requires that breach of contract actions be brought within six years of the alleged breach.  Minn. Stat. § 540.05(1).  Wilkov's claims in Count One against Ameriprise all relate to Ameriprise's actions during her franchise relationship, which ended in August 2005.  Accordingly, these claims were time-barred after August 2011.  Plaintiff's assertion that the limitations period should be tolled due to Ameriprise's alleged fraudulent concealment is unavailing.  Fraudulent concealment requires a showing that the defendant "has fraudulently hidden a legal claim" from the plaintiff.  Minn. Laborers Health and Welfare Fund v. Granite Re, Inc., 844 N.W.2d 509, 514 (Minn. 2014).  Wilkov does not allege that the terms of the Franchise Agreement were concealed from her.  Insofar as her allegations relate to Ameriprise's treatment of her (i.e., allegations that Ameriprise failed to supervise her adequately), Wilkov cannot plausibly allege that she was unaware of her own treatment.  That Ameriprise was found to be liable at the FINRA hearing does not change this analysis.  A breach of contract action is premised on a contractual duty, and Wilkov does not state facts that make plausible her assertion that Ameriprise affirmatively concealed the existence of its contractual duties or any relevant facts.  See Minn. Laborers, 844 N.W.2d at 514 (requiring that the defendant conceal facts "by positive affirmative act and not mere silence").

Wilkov's claim for unjust enrichment, which is also asserted in Count One, is unsustainable because, under either Minnesota or New York law, an unjust enrichment claim cannot be asserted where there is an enforceable written contract governing the claim. 2002 Lawrence R. Buchalter Alaska Trust v. Philadelphia Financial Life Assur. Co., 96 F. Supp. 3d 182, 234 (S.D.N.Y. 2015) ("[U]nder New York law, Plaintiffs cannot raise the unjust enrichment claim in the alternative to the breach of contract claim because there is a valid and enforceable written contract governing the subject matter." (Internal quotation marks and modifications omitted)); U.S. Fire Ins. Co. v. Minn. Zoological Bd., 307 N.W.2d 490, 497 (Minn. 1981) (holding that equitable relief, like a claim of unjust enrichment, "cannot be granted where the rights of the parties are governed by a valid contract"). Wilkov asserts that Ameriprise "was unjustly enriched by collecting fees from Plaintiff and clients of the firm for compliance supervision under the Franchise Agreement which it never performed." (AC ¶ 30.) Because this claim is explicitly premised on the rights and obligations of the parties under the Franchise Agreement, it cannot be brought as a claim for unjust enrichment.

Accordingly, Count One of the Amended Complaint fails to state a claim for which relief may be granted, and is dismissed.

Count Two: Fraud and Fraudulent Concealment, Against Ameriprise

Ameriprise also moves to dismiss Count Two of the Amended Complaint, on the grounds that it is time-barred and that it fails to state a claim for which relief may be granted. Count Two asserts that Ameriprise "concealed from Plaintiff that it was providing no or inadequate compliance supervision" and "concealed facts from the District Attorney regarding its failure to provide compliance supervision" in connection with the Grand Jury proceedings

that lead to Plaintiff's indictment.  (AC ¶¶ 33-34.)  Plaintiff's opposition papers do not address

Ameriprise's arguments regarding the insufficiency of Count Two.  Accordingly, this claim is

deemed abandoned, and is dismissed.  See Martinez v. Sanders, No. 02 CV 5624, 2004 WL

1234041, at *3 (S.D.N.Y. June 3, 2004) ("Because Plaintiff did not address Defendant's motion

to dismiss with regard to these claims, they are deemed abandoned.").


Count Three: Permanent Injunction, Mandamus, and/or Other Equitable Relief, Against the DA

       As explained above in the context of this Court's analysis of subject matter

jurisdiction, Plaintiff does not state a claim against the DA under Count Three, which is identical

in the Amended Complaint and the Verified Complaint.  This count is accordingly dismissed.


Count Four: Prosecutorial Misconduct and Improper Disbursement, Against the DA

       As explained above in the context of this Court's analysis of subject-matter

jurisdiction, Plaintiff's claim for prosecutorial misconduct is barred by her guilty plea.  See

Garcia, 115 A.D.3d at 447.

       The DA argues that Plaintiff's claim for money damages in Count Four is subject

to the notice of claim requirement and one year plus 90 days statute of limitations governing

claims against an agency or employee of the City of New York.  N.Y. Gen. Muni. L. §§ 50-e &

50-i.  The DA notes that Plaintiff does not plead that she filed a notice of claim and that, insofar

as her claims relate to the 2008 disbursement proceedings, they are plainly time barred.  The DA

further notes that Plaintiff explicitly waived all claims relating to the asset forfeiture proceeding

by signing the Stipulation of Discontinuance.

       Plaintiff does not address these issues, asserting in her opposition papers only that

she uncovered potentially exculpatory evidence (i.e., the record and results of the FINRA proceeding) only after having filed a motion for relief from her conviction under New York Criminal Procedure Law 440.10.  As the DA notes in his reply submission, Wilkov is not precluded from filing a subsequent 440.10 motion, and the dismissal of Count Four is without prejudice to any such motion practice.  (Docket entry no. 43, at 5.)  Wilkov nonetheless has failed to allege compliance with New York law in asserting her claim for money damages against a City employee, to the extent she seeks to recover from the DA himself.  Accordingly, Count Four is also dismissed.

<u>CONCLUSION</u>

For the foregoing reasons, Defendants' motions to dismiss are granted in their entirety, and the Amended Complaint is dismissed.  This Memorandum Opinion and Order resolves docket entry nos. 29 and 33.

The Clerk of Court is respectfully requested to enter judgment for Defendants and close this case.

SO ORDERED.

Dated: New York, New York
       March 30, 2017

 /s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
United States District Judge